1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8    CHRISTOPHER O'NEILL,                    )    3:12-cv-00030-LRH (WGC)
                                            )
              Plaintiff,                     )    **REPORT AND RECOMMENDATION**
9                                            )    **OF U.S. MAGISTRATE JUDGE**
        vs.                                  )
10                                           )
     DR.  ROBERT BANNISTER, et.  al.         )
11                                           )
              Defendants.                    )
12    _____    )

13            This Report and Recommendation is made to the Honorable Larry R.  Hicks, United

14    States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

15    to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is

16    Plaintiff's Motion for Preliminary Injunction. (Doc. # 10.) [1] Defendants opposed (Doc. # 14)

17    and Plaintiff replied (Doc. # 21). After a thorough review, the court recommends that Plaintiff's

18    motion be denied.

19                                    **I. BACKGROUND**

20            At all relevant times, Plaintiff Christopher O'Neill was an inmate in custody of the

21    Nevada Department of Corrections (NDOC). (Pl.'s Compl.  (Doc. # 4) at 1.) The events giving

22    rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

23    Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are

24    Dr. Robert Bannister, Dr. Karen Gedney, Dr. Michael Koehn, John Peery, and Susan Snider.

25    (Screening Order (Doc. # 3).)

26            On screening, the court determined that Plaintiff states colorable claims against

27

28            [1] Refers to court's docket number.

Defendants in Counts I-III under the Eighth Amendment for deliberate indifference to his serious medical need related to the treatment of hepatitis C. (Doc. # 3.)

Plaintiff asserts that Defendants have known that he has had hepatitis C for eighteen years. (Doc. # 4 at 3.) In Count I, Plaintiff alleges that on January 20, 2011, Dr. Gedney answered Plaintiff's request asking about a treatment plan for his hepatitis C by stating, "there is no rush to consider treatment." (Doc. # 4 at 4.) Plaintiff claims he informed Dr. Gedney that he was experiencing pain and fatigue as a result of his condition, but she refused to provide treatment. (*Id.*)

In Count II, Plaintiff alleges that on February 10, 2011, he filed a grievance regarding his hepatitis C and the lack of treatment for his painful symptoms. (Doc. # 4 at 5.) He asserts that defendant Snider responded to the grievance by telling Plaintiff that his liver enzymes were within normal limits and denied any medical care. (*Id.*) He further alleges that his test results showed his liver enzyme levels were elevated; therefore, defendant Snider was not truthful in her response. (*Id.*) Plaintiff received a first level grievance response from defendant Peery, whom he asserts also denied treatment. (*Id.*) Finally, Plaintiff received a second level grievance response from Dr. Bannister, agreeing with the previous level responses. (*Id.*)

In Count III, Plaintiff alleges that on November 22, 2011, he was seen by Dr. Koehn regarding his elevated liver enzymes and extreme pain. (Doc. # 4 at 6.) Dr. Koehn performed an examination and confirmed that Plaintiff's liver was swollen as a result of his hepatitis C and that was responsible for causing his pain. (*Id.*) However, Dr. Koehn told Plaintiff that he does not treat hepatitis C and Plaintiff would just have to tough it out. (*Id.*) Plaintiff alleges that Dr. Koehn ended the exam and did not provide any treatment for his condition. (*Id.*)

On May 29, 2012, Plaintiff filed a Motion for Preliminary Injunction related to treatment of his hepatitis C. (Doc. # 10.) Specifically, he requests an order that Defendants immediately arrange for Plaintiff to be evaluated by a qualified liver specialist and be given a liver biopsy. (*Id.* at 7.) In response, Defendants argue that Plaintiff is being treated for his condition in an appropriate manner in the opinion of his medical providers. (Doc. # 14.)

## II.  LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v.  Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions.  *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc.  v. Selecky*, 586 F.3d 1109, 1127 (9th Cir.  2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when

applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials.  The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)…operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

4

### III.  DISCUSSION

**A.  LIKELIHOOD OF SUCCESS ON THE MERITS**

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

**1.  Deliberate indifference standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v.  Gamble*, 429 U.S. 97, 104 (1976).  "The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc.  v.  Miller*, 104 F.3d.  1133 (9th Cir.  1997).  "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v.  Dental Dep't*, 865 F.2d 198, 200 (9th Cir.  1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v.  Smith*, 974 F.2d at 1059.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v.  Smith*, 203 F.3d 1122, 1131 (9th Cir.  2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

5

1       If the medical needs are serious, Plaintiff must show that Defendants acted with

2 deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

3 high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.  2004). Deliberate

4 indifference entails something more than medical malpractice or even gross negligence. *Id*.

5 Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*,

6 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows

7 of and disregards an excessive risk to inmate health or safety; the official must both be aware

8 of the facts which the inference could be drawn that a substantial risk of serious harm exists,

9 and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also*

10 *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.  2002) (quoting *Farmer*, 511 U.S. at 858).

11 "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they

12 deny, delay, or intentionally interfere with medical treatment" or the express orders of a

13 prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v.*

14 *Dental Dep't.*, 865 F.2d 198, 201 (9th Cir.  1989) (internal quotation marks and citation

15 omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate

16 that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

17       In addition, a prison physician is not deliberately indifferent to an inmate's serious

18 medical need when the physician prescribes a different method of treatment than that

19 requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in

20 diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

21 Amendment rights); *see also Snow v.  McDaniel*, 681 F.3d 978, 987 (citing *Sanchez v.  Vild*,

22 891 F.2d 240, 242 (9th Cir.  1989)); *Franklin v.  Oregon*, 662 F.2d 1337, 1344 (9th Cir.  1981)

23 (difference of opinion between a prisoner-patient and medical staff regarding treatment is not

24 cognizable under § 1983). To establish that a difference of opinion amounted to deliberate

25 indifference, the inmate "must show that the course of treatment the doctors chose was

26 medically unacceptable under the circumstances" and that the course of treatment was chosen

27 "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v.  McIntosh*,

28

90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow*, 681 F.3d at 988 (quoting *Jackson*, 90 F.3d at 332) (finding that "a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under the circumstances").

### 2. Analysis

Plaintiff claims he is likely to succeed on the merits because: (1) his hepatitis C is a serious medical need which causes him to suffer from severe joint pain, fatigue, nausea, and liver pain; (2) Defendants have knowledge of his condition; (3) Defendants have failed to respond to Plaintiff's condition by refusing to refer him to a liver specialist to be evaluated for treatment or provide him with a liver biopsy; and (4) his liver is being damaged as a result of Defendants' failure to treat his condition. (Doc. # 10 at 4.)

Defendants assert that Plaintiff has been diagnosed with hepatitis C, genotype 1a, and as such has been placed within NDOC's hepatitis C treatment clinic and receives regular medical care related to his condition, including annual blood panels for assessing the progression of his disease. (Doc. # 14 at 2.)

In his reply, Plaintiff argues that only a liver biopsy will adequately reveal the status of his condition. (Doc. # 21 at 3.)

Defendants do not dispute that Plaintiff has hepatitis C. (Ex. A (Peery Decl.) ¶ 6.) While Defendants do appear to dispute that Plaintiff's condition constitutes a serious medical need, assuming without deciding that Plaintiff's hepatitis C constitutes a serious medical need, the court finds Plaintiff has not demonstrated deliberate indifference on the part of Defendants.

Defendant Peery states that during the course of his incarceration, Plaintiff's hepatitis C has been regularly monitored and treated based upon his genotype. (*Id*. ¶ 7.) Hepatitis C is a viral infectious disease which primarily affects the liver, and is often asymptomatic. (*Id*. ¶¶ 8-9.) Treatment of the disease, including the use of medications, poses risk to the patient including burden to the liver. (*Id*. ¶ 10.) According to defendant Peery, in cases where the disease is not presenting problems such as elevated liver enzymes or liver compromise, there

is no medical basis for treatment other than monitoring the progress of the disease. (*Id.* ¶¶ 11-12.) Drug treatment is utilized in hepatitis C cases to render the viral load as low as possible so the virus does not destroy the liver. (*Id.* ¶ 13.) However, treatment is balanced against the harm the medication may cause to the patient. (*Id.*)

Plaintiff has been in the NDOC hepatitis C treatment clinic since 2011, which provides him with monitoring of his condition through regular medical examinations and blood tests. (*Id.* ¶ 15.) According to defendant Peery, drug intervention is currently not warranted in Plaintiff's case. (*Id.* ¶ 16.) Plaintiff's condition will continue to be monitored. (*Id.* ¶ 20) Plaintiff was most recently denied treatment by the Utilization Review Committee on February 9, 2012. (Doc. # 15-1 at 34.)

Defendant Peery also states that Plaintiff has a history of manipulating NDOC's medical system in efforts to obtain narcotic pain medication and other treatment, and his subjective complaints are often not supported by objective medical examination. (Ex. A (Peery Decl.) ¶ 17.)

In connection with his reply, Plaintiff submits several medical kites related to requests for his liver enzyme scores. (Doc. # 21 at 6-8.) However, the most recent of these kites, dated April 18, 2012, reveals that Plaintiff's liver enzyme scores were within the normal range. (*Id.* at 7.)

The court finds that Plaintiff has not demonstrated a likelihood of *success* on the merits. Instead, the evidence currently before the court indicates a difference of opinion between Plaintiff and his medical providers concerning whether or not he receives treatment for his condition. The medical records demonstrate that Plaintiff's liver enzymes are being monitored, he submitted himself for consideration for treatment before the Utilization Review Committee, and the committee has determined that Plaintiff is not currently a candidate for treatment. NDOC will continue to monitor the progress of Plaintiff's condition. While Plaintiff may disagree with this decision, and assert that NDOC should offer him more in the way of treatment, this amounts to a difference of opinion and not deliberate indifference.

**B.  Irreparable Injury**

Plaintiff must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

Plaintiff argues Defendants' failure to treat his hepatitis C will irreparably harm him by causing permanent disability and/or premature death. (Doc. # 10 at 5.)  Plaintiff's conclusion is unsupported by his medical records.  Therefore, Plaintiff has not established a likelihood of irreparable injury in the absence of injunctive relief.

**C.  Balance of Hardships**

A party seeking injunctive relief "must establish…that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.

Plaintiff claims that if he loses use of his liver, his potential suffering will outweigh the harm to Defendants in referring him to a specialist. (Doc. # 10 at 6.)

Again, Plaintiff's claim hinges on his subjective belief that he will lose his liver if he is not given the treatment he desires. This is simply unsupported by the objective medical evidence before the court.

**D.  Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Plaintiff contends it is always in the public interest to follow the law.  (Doc. # 10 at 6.)

While it may be in the public interest to follow the law, Plaintiff has not demonstrated that Defendants have engaged in conduct that amounts to a constitutional violation.

**E.  Conclusion**

The prerequisites for injunctive relief have not been met.  Moreover, Plaintiff seeks an award of mandatory injunctive relief, but he has not established that both the facts and the law are *clearly* in his favor.  As set forth above, "in doubtful cases" a mandatory injunction will not

1    be issued.  *See Anderson*, 612 F.2d at 1115.  Accordingly, Plaintiff's Motion for Preliminary

2    Injunction (Doc. # 10) should be denied.

3                                    **IV. RECOMMENDATION**

4           **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING**

5    Plaintiff's Motion for Preliminary Injunction (Doc. # 10).

6           The parties should be aware of the following:

7           1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

8    Local Rules of Practice, specific written objections to this Report and Recommendation within

9    fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

10   Judge's Report and Recommendation" and should be accompanied by points and authorities

11   for consideration by the District Court.

12          2.      That this Report and Recommendation is not an appealable order and that any

13   notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

14   District Court's judgment.

15          DATED: August 29, 2012.

16

17                                              _____

18                                              WILLIAM G.  COBB
                                                UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28
                                                        10