**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTOPHER O'NEILL, | 3:12-cv-00030-LRH (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| DR. ROBERT BANNISTER, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Leave to File First Amended Complaint. (Doc. # 24.)[1] Defendants have not filed an opposition. After a thorough review, the court recommends that Plaintiff's motion be denied with prejudice.

## I. BACKGROUND

At all relevant times, Plaintiff Christopher O'Neill was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 4) at 1.) The events giving rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Dr. Robert Bannister, Dr. Karen Gedney, Dr. Michael Koehn, John Peery, and Susan Snider. (Screening Order (Doc. # 3).)

On screening, the court determined that Plaintiff states colorable claims against

---
[1] Refers to court's docket number.

Defendants in Counts I-III under the Eighth Amendment for deliberate indifference to his serious medical need related to the treatment of hepatitis C. (Doc. # 3.)

Plaintiff asserts that Defendants have known that he has had hepatitis C for eighteen years. (Doc. # 4 at 3.) In Count I, Plaintiff alleges that on January 20, 2011, Dr. Gedney answered Plaintiff's request asking about a treatment plan for his hepatitis C by stating, "there is no rush to consider treatment." (Doc. # 4 at 4.) Plaintiff claims he informed Dr. Gedney that he was experiencing pain and fatigue as a result of his condition, but she refused to provide treatment. (*Id.*)

In Count II, Plaintiff alleges that on February 10, 2011, he filed a grievance regarding his hepatitis C and the lack of treatment for his painful symptoms. (Doc. # 4 at 5.) He asserts that defendant Snider responded to the grievance by telling Plaintiff that his liver enzymes were within normal limits and denied any medical care. (*Id.*) He further alleges that his test results showed his liver enzyme levels were elevated; therefore, defendant Snider was not truthful in her response. (*Id.*) Plaintiff received a first level grievance response from defendant Peery, whom he asserts also denied treatment. (*Id.*) Finally, Plaintiff received a second level grievance response from Dr. Bannister, agreeing with the previous level responses. (*Id.*)

In Count III, Plaintiff alleges that on November 22, 2011, he was seen by Dr. Koehn regarding his elevated liver enzymes and extreme pain. (Doc. # 4 at 6.) Dr. Koehn performed an examination and confirmed that Plaintiff's liver was swollen as a result of his hepatitis C and that was responsible for causing his pain. (*Id.*) However, Dr. Koehn told Plaintiff that he does not treat hepatitis C and Plaintiff would just have to tough it out. (*Id.*) Plaintiff alleges that Dr. Koehn ended the exam and did not provide any treatment for his condition. (*Id.*)

On May 29, 2012, Plaintiff filed a Motion for Preliminary Injunction related to treatment of his hepatitis C. (Doc. # 10.) Specifically, he requests an order that Defendants immediately arrange for Plaintiff to be evaluated by a qualified liver specialist and be given a liver biopsy. (*Id.* at 7.) Defendants filed an opposition on June 8, 2012. (Doc. # 14) Plaintiff filed his reply on July 5, 2012. (Doc. # 21.) That motion will be addressed in a separate report and

1 recommendation.

2 On July 11, 2012, Plaintiff filed the instant Motion for Leave to File First Amended Complaint (Doc. # 24), wherein he seeks to add a substantive due process claim based on an asserted informational privacy right related to the disclosure of his medical information by Dr. Koehn. (*Id.* at 2.)

## **II. LEGAL STANDARD**

Except for amendments made "as a matter of course," under Federal Rule of Civil Procedure 15(a)(1), Rule 15(a)(2) provides, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).

While the court should freely give leave to amend when justice requires, leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

In addition, Rule 15(d) governs the filing of supplemental pleadings, and provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

Local Rule 15-1 requires that a party moving to amend a pleading "attach the proposed amended pleading to any motion to amend, so that it will be complete in itself without reference to the superseding pleading." L.R. 15-1(a).

In his proposed amended complaint, Plaintiff seeks to add a substantive due process claim alleging that he has a constitutional right to privacy with respect to his medical diagnoses and information, and that right was violated on February 13, 2012, when Dr. Koehn discussed Plaintiff's medical history in the presence of another inmate and correctional officer. (Doc. # 24-1 at 9.) The deliberate indifference allegations from the original Complaint basically the

3

1 same.

2   The events alleged in Plaintiff's original Complaint occurred in January, February, and November of 2011, and Plaintiff submitted his original Complaint for filing on January 17, 2012. (*See* Doc. # 4 at 1, 4-6.) The events alleged in the proposed substantive due process claim took place on February 13, 2012, after Plaintiff submitted his original Complaint for filing.

  The title of the pleading is not determinative. A pleading labeled an "amended pleading" will be treated as a supplemental pleading if the new facts alleged occurred after the original complaint was filed. *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073 (9th Cir. 1989). Here, while Plaintiff titles his proposed pleading as an amended complaint, the nature of his allegations demonstrate that he actually seeks to file a supplemental pleading because the alleged disclosure of his private medical information took place after his original Complaint was submitted for filing. Therefore, the court will treat Plaintiff's motion as seeking leave to file a supplemental pleading under Rule 15(d).

  Rule 15(d) provides a "tool of judicial economy and convenience." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Leave to permit a supplemental pleading is favored, *Keith*, 858 F.2d at 473, and the rule allows the addition of claims that do not "arise out of the same transaction" if "some relationship" between them exists. *Id.* at 474. If, on the other hand, the supplemental pleading asserts new and distinct claims unrelated to the original complaint that should be the subject of a separate lawsuit, leave to amend should be denied. *See Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

  Finally, the court is required to screen complaints brought by a prisoner seeking relief against a government entity or an officer or employee of a government entity, and must dismiss a complaint, or a portion thereof, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) & (2).

///

///

4

### III. DISCUSSION

**A. The Proposed Supplement Seeks to Assert a New and Distinct Claim**

First, the court finds that the proposed supplemental pleading seeks to assert a new and distinct claim unrelated to the original Complaint. The original Complaint concerns Plaintiff's allegations that Defendants were deliberately indifferent to his serious medical need when they failed to provide him with treatment for his hepatitis C. The proposed supplement, on the other hand, involves Plaintiff's allegation that his medical information was wrongfully disclosed to third parties. It has nothing to do with the alleged inadequacy of the medical treatment Plaintiff received at NDOC. This is an entirely distinct claim from the denial of medical care.

**B. The Supplement Would be Futile**

Next, the court finds that the proposed supplement would be futile.

Plaintiff asserts the disclosure of his medical records violates the substantive due process protections of the Fourteenth Amendment. The Fourteenth Amendment states, "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const., amend XIV. To state a substantive due process claim, a plaintiff must allege that "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

> To establish a violation of substantive due process..., a plaintiff is ordinarily required to prove that a challenged governmental action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.

*Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations and brackets omitted), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007).

For the reasons set forth below, the court finds that whether a constitutional right to informational privacy related to the disclosure of medical records exists is not well established; therefore, Defendant Koehn is entitled to qualified immunity with respect to any alleged substantive due process violation.

///

5

**1. Whether a constitutional right to informational privacy related to medical information exists is unclear**

Whether a constitutional right to privacy regarding the disclosure of medical information exists is unclear. *See Nat'l Aeronautics and Space Admin. v. Nelson,* 131 S.Ct. 746, 751 (2011); *see also Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1534 (Feb. 22, 2011).

**a. The Supreme Court has not definitively recognized such a right**

In *Whalen v. Roe*, 429 U.S. 589 (1977), the Supreme Court acknowledged that a constitutional right to privacy may exist regarding "the individual interest in avoiding disclosure of personal matters[,]" but the Court has never definitively determined or clearly defined such a right. *See id.* at 599. Nor has it been held to specifically apply to the disclosure of medical records. In *Whalen*, the court ultimately held that any right of privacy in medical information was not infringed by a New York law requiring that physicians disclose identifying information for any patient to whom they prescribed certain controlled substances. *Id.* at 605. The Supreme Court concluded that the New York statute at issue contained sufficient security provisions to protect against public disclosure of the patients' information so that there was no infringement on any privacy interest that "arguably ha[d] its roots in the Constitution." *Id.* at 605-06. Accordingly, the Court concluded there was no violation of "any right or liberty protected by the Fourteenth Amendment."

In the same year, the Supreme Court issued an opinion which referred to a constitutional "interest in avoiding disclosure." *See Nixon v. Administrator of General Services,* 433 U.S. 425, 457 (1977). This case related to President Nixon's challenge to the statute which required him to turn over his tape recordings for archival and screening purposes. *Id.* at 455. President Nixon claimed that the statute violated his right to privacy under the Fourth and Fifth Amendments. *Id.* at 455. The Court did not decide whether a constitutional right to informational privacy exists, but ultimately rejected President Nixon's privacy argument. *Id.* at 458.

6

In 2011, the Supreme Court issued its opinion *National Aeronautics and Space Administration v. Nelson*, 131 S.C.t 746 (2011), where it considered a claimed violation of the "right to informational privacy" by independent contractors of NASA who were required to complete a background check. *Id.* at 754. The Court noted that since the *Nixon* decision, "the Court has said little else on the subject of an 'individual interest in avoiding disclosure of personal matters[,]'" and while "[a] few opinions have mentioned the concept in passing and in other contexts[,]" "no other decision has squarely addressed a constitutional right to informational privacy." *Id.* at 756 (citations omitted).

Despite an admitted lack of clarity on the subject, the Supreme Court expressly declined to decide whether or not a constitutional right to informational privacy exists. *Nelson*, 131 S.Ct. at 751, 757 (stating that it will "assume, without deciding" that there exists a right to informational privacy; and "we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance"). The Court ultimately determined that the background check was a reasonable employment-related inquiry, and did not violate an assumed constitutional right to informational privacy. *See id.* at 763-64. Justices Scalia and Thomas concurred in the judgment, agreeing with the result, but asserting that it was because "[a] federal constitutional right to 'informational privacy' does not exist." *Id.* at 764 (SCALIA, J., concurring); *see also id.* at 769 (THOMAS, J., concurring) ("I agree with Justice SCALIA that the Constitution does not protect a right to informational privacy.").

**b. The Ninth Circuit has not definitively recognized such a right**

Faced with these allegations, courts in this circuit have generally addressed a prisoner's claim of a right to informational privacy in their medical records, if any, under the Fourteenth Amendment. *See Seaton*, 610 F.3d at 537-39; *Birks v. Terhune*, 398 Fed. App'x. 308, 309 (9th Cir. 2010); *Romero v. Katavich*, 2012 WL 484782 (E.D. Cal. Feb. 14, 2012). However, the Ninth Circuit has not definitively answered whether or not such a right exists.

In *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010), a prisoner was approaching early

7

release and he was transferred to a hospital to be evaluated for possible civil commitment under California's Sexually Violent Predator Act. *Id.* at 532-33. He sued various defendants alleging that his constitutional right to informational privacy under the Due Process Clause was violated when the defendants allowed psychologists to look at his medical records and provide their opinions and supporting data to the district attorney's office. *Id.* at 532, 534 ("He argues his case based on a right to informational privacy under the Due Process Clause.").

The Ninth Circuit pointed out that Plaintiff's claim involved two time periods: (1) the time period while he was still serving out his sentence, and; (2) any subsequent period. *Seaton*, 610 F.3d at 534. The court stated: "To the extent that his constitutional claim attacks disclosure while he was in prison serving his sentence and for a penological purpose relating to his imprisonment, Seaton's claim falls within the body of law regarding privacy for prisoners, the general principle being that *whatever privacy right he has* may be overridden for legitimate penological reasons." *Id.* (emphasis added). To that end, the court concluded, "[w]e join our sister circuits in holding that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Id.* The court found that such a legitimate interest not only existed in that case, but was "substantial." *Id.* at 535 ("Prisons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts.").

The court's holding arguably indicates the recognition of at least a limited right to privacy in the confidentiality of an inmate's medical records when there is no legitimate penological interest justifying their disclosure.

This conclusion gains additional support when, in affirming the dismissal of his claim, the court in *Seaton* specifically stated that the plaintiff had failed to "plead any facts to rebut the connection between disclosure of his prison treatment records and the State's legitimate penological objectives during his custody." *Id.* at 535 (citing *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999)). It is this language that arguably opens the door to a constitutional

8

challenge to the disclosure of an inmate's medical records under circumstances where an inmate pleads facts indicating there is no legitimate penological interest justifying the disclosure.

However, the issue can hardly be deemed settled. In stating that it "join[s] [its] sister circuits in holding that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them[,]" the court cites to cases from the Second, Third, Fifth and Eleventh Circuits that appear to recognize at least a limited right of an inmate to maintain, but also to the Sixth Circuit which declined to adopt a constitutional right to informational privacy, and the Seventh Circuit, which probably most accurately describes the law in this regard as unclear. *See Seaton*, 610 F.3d at 534, n. 18.

The remainder of the court's analysis in *Seaton* further reveals the undetermined status of a constitutional right to informational privacy. The court went on to evaluate whether Seaton had a constitutional right to medical privacy for the time period following his release. *Seaton*, 610 F.3d at 535- 541. In that portion of its analysis, the Ninth Circuit acknowledged the uncertainty regarding whether the constitution protects a right to medical privacy. *See Seaton*, 610 F.3d at 536-37. The court pointed out that it had recognized a right to privacy with respect to medical information under a different context in *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004) (holding that there was a "constitutionally protected interest in avoiding disclosure of personal matters including medical information" in the context of disclosure of abortion information). Even in that context, the court held that a constitutional right to medical privacy "is a conditional right which may be infringed upon a showing of proper governmental interest." *Seaton*, 610 F.3d at 358 (citation omitted); *Tucson*, 379 F.3d at 551 (citation omitted). *Tucson* utilized a balancing test to determine "whether the governmental interest in obtaining information outweighs the individual's privacy interest" and applied the following factors:

(1) the type of information requested, (2) the potential for harm in any

9

> subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Tucson*, 379 F.3d at 551.

In the end, the Ninth Circuit in *Seaton* declined to definitively assert whether such a right exists. *Seaton*, 610 F.3d at 541 ("one who goes to a physician in order to obtain medical benefit to himself or his family has substantial privacy interests *that may or may not be constitutionally protected*" (emphasis added)).However, the court went on to analyze the remainder of Seaton's claim assuming that such a right exists (as the Supreme Court did in *Nelson*), and applying the balancing test in *Tucson*, it found that the California procedure of which Seaton complained, did not violate such a right. *Id*.

### c. District court cases since *Seaton* and *Nelson* are not uniform in their treatment of these claims

District court decisions in cases raising a constitutional challenge to the disclosure of medical records since *Seaton* and *Nelson* have not been uniform.

In *O'Phelan v. Loy*, 2011 WL 719053 (D. Haw., Feb. 18, 2011), the court concluded that "Supreme Court and Ninth Circuit authority demonstrates that the constitutional right of informational privacy is murky, at best." *Id*. at * 11 (citations omitted). On this basis, the court determined the defendant was entitled to qualified immunity. *Id*.

In *Titus v. City of Prairie City*, 802 F.Supp.2d 1210 (D. Or. July 14, 2011), the plaintiff alleged his right to medical informational privacy was violated when his employer inquired into his use of sick leave to determine whether he was abusing the sick leave system. *Titus* relied on *In re Crawford*, 194 F.3d 954 (9th Cir. 1999), which found that the informational privacy right extended beyond "fundamental rights." The court did not address *Seaton* or *Nelson*.

In *Newman v. Poquette*, 2012 WL 487116 (C.D. Cal. Jan. 12, 2012), the district court refused to dismiss a prisoner's section 1983 informational privacy claim where the prisoner "alleged sufficient facts to show that the disclosure of his medical information was unrelated to any penological interest." *Id*. at *3. In that case, the plaintiff alleged that a social worker

10

invaded his right to medical privacy when he disclosed the plaintiff's HIV and hepatitis status to his family despite instructions to the contrary. *Id.* at *1. *Poquette* recognized the holding in *Seaton* that prisoners "do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Id.* at *3. The court did not address the Ninth Circuit's failure in *Seaton* to definitively determine whether a constitutional right to informational privacy exists with respect to the disclosure of medical information. Nor did the court conduct a qualified immunity analysis.

In *Romero v. Katavich,* 2012 WL 484782 (E.D. Cal. Feb. 14, 2012), the court found that the plaintiff failed to state a claim for violation of his right to privacy under the Fourteenth Amendment. The court, construing the case under *Seaton*, stated, "[a]lthough it appears that prisoners are entitled to a certain amount of privacy in their medical records, Plaintiff has failed to provide enough information for the Court to determine whether he has stated a claim for violation of this right." *Id.* at * 7. He was given leave to amend in this regard. *Id.*

In *Huling v. City of Los Banos*, 2012 WL 1372810 (E.D. Cal. April 19, 2012), the plaintiff alleged a violation of his due process right to informational privacy in connection with the disclosure of his medical information. *Id.* at *5-6. On a motion to dismiss, the court found the defendants were entitled to qualified immunity on an informational privacy right claim because the right could not be clearly established. *Id.* at *13-14.

In *Wampler v. Carson City Sheriff*, 2012 WL 3205943 (D. Nev. Aug. 3, 2012), the court was faced with whether disclosure of an individual's social security number violates a right to informational privacy. *Id.* at *1. The court reiterated that whether a right to informational privacy exists is unsettled. *See id.* at *4. The court ultimately determined that the defendant was entitled to qualified immunity because even if a right to informational privacy exists, such a right was not clearly established when the alleged conduct occurred. *Id.* at *7.

///
///

11

**2. Defendant Koehn is entitled to qualified immunity as to Plaintiff's substantive due process claim**

### a. Standard for qualified immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Padilla v. Yoo*, 678 F.3d 748, 758 (9th Cir. 2012); *Pearson v. Callahan*, 555 U.S. 223 (2009).

A "[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S.Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Padilla,* 678 F.3d at 758 (citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and courts are "not to define clearly established law at a high level of generality[.]" *Id.* at 2084-85; *see also Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

Whether a constitutional right was violated and whether the right was clearly established at the time of the violation are legal questions for the court. *See Serrano v. Francis*, 345 F.3d 1071, 1080 (9th Cir. 2003); *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano*, 345 F.3d at 1077.

Qualified immunity may be resolved by way of a motion to dismiss. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted) ("Unless the plaintiff's allegations state a

12

claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"). In addition, the court is authorized to dismiss *sua sponte* an action that seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A.

### b. Analysis

*Seaton* arguably implies that an inmate *may* challenge the disclosure of his or her medical records under the Constitution where there is no legitimate penological interest justifying their disclosure. But both *Seaton* and *Nelson* make clear that whether a constitutional right to informational privacy exists remains unsettled. As such, the court finds that the proper method for addressing Plaintiff's proposed due process claim related to disclosure of his medical information is under a qualified immunity analysis.

Dr. Koehn is entitled to qualified immunity because, first, it is not clear that Plaintiff can state a claim for violation of a constitutional right because it is not clear that such a right even exists. Second, even assuming arguendo that Plaintiff has adequately alleged a constitutional claim for violation of his informational right to privacy in connection with the disclosure of his medical information by pleading that the disclosure of his medical information was not justified by legitimate penological purposes, Dr. Koehn is still entitled to qualified immunity because such a right was not clearly established at the time the alleged conduct took place.  In other words, given the state of the law, a reasonable person in Dr. Koehn's position would not have known that his actions violated the Constitution.

### 3. HIPPA

To the extent Plaintiff's proposed supplement can be construed as asserting that defendant Koehn violated the Standards for Privacy of Individually Identifiable Health Information (Privacy Rule), 45 C.F.R. § 164.500, *et. seq.*, implemented under the Health Insurance Portability and Accountability Act of 1996 (HIPPA), the Ninth Circuit has found that "HIPPA itself provides no private right of action." *Seaton*, 610 F.3d at 533 (citing *Webb Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007)). Instead, the Department of

1 Health and Human Services is responsible for administering and enforcing the Privacy Rule
2 and may impose a penalty on a covered entity for a failure to comply with HIPPA's Privacy
3 Rule. *See* 45 C.F.R. § 160.300, *et. seq.* Accordingly, Plaintiff has not stated a claim for violation
4 of HIPPA.

### 4. PHYSICIAN-PATIENT PRIVILEGE

Nor does Plaintiff state a claim for violation of the physician-patient privilege.

> The common law- as interpreted by United States courts in the light of reason and experience-governs a claim of privilege unless any of the following provides otherwise:
> • The United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

A privilege is "a rule that gives a person a right to refuse to disclose information to a tribunal that would otherwise be entitled to demand and make use of that information in performing its assigned function." 23 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 5422 (1st ed. 2012). There is not a federally recognized physician-patient privilege in a federal question case. *Id.* at §§ 5521-22; *see also Whalen v. Roe*, 429 U.S. 589, 602 n. 28 (1977); *In re Grand Jury Proceedings*, 867 F.2d 562, 564 (9th Cir. 1989), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996) (recognizing a federal psychotherapist-patient privilege); *Soto v. City of Concord*, 162 F.R.D. 603, 618 (9th Cir. 1995) ("physician-patient privilege does not exist at federal common law and the Ninth Circuit has not recognized a physician-patient privilege"); *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir. 1992) ("in federal question cases with pendant state law claims, the law of privilege is governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience").)

### 5. DUTY OF CONFIDENTIALITY

Finally, to the extent Plaintiff's claim can be construed as asserting a breach of the physician's duty of confidentiality, he does not have a private right of action. *See, e.g., Miller*

14

*v. McDaniel*, 124 Fed.Appx. 488, 490 (9th Cir. 2005) (citing Nev. Rev. Stat. 49.215, 49.225, *Ashokan v. State Dep't of Ins.*, 856 P.2d 244, 248 (Nev. 1993), 109 Nev. 662).

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Leave to File First Amended Complaint (Doc. # 24) **WITH PREJUDICE**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: August 29, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE